Commonwealth of Pennsylvania, Department of Environmental Resources *v.* Monongahela and Ohio Dredging Co., Appellant.

     Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Frank E. Coho,* for appellant.

*Thomas M. Burke,* Special Assistant Attorney General, with him *Elissa A. Parker,* Special Assistant Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., October 28, 1975:

This is an appeal from an adjudication and order of the Environmental Hearing Board (EHB) affirming the power of the Department of Environmental Resources (DER) to issue a cease and desist order, without hearing, against the Monongahela and Ohio Dredging Company (Appellant) restraining Appellant from all acts which result or may result in a change of the cross section of the Allegheny River until DER approval is obtained. The order from which the instant appeal was taken reversed an earlier EHB order dismissing Appellant's appeal for want of subject matter jurisdiction.

Underlying this appeal are the following facts: On October 12, 1972, DER issued a cease and desist order, under a covering letter, to Appellant. Prior to DER's Regional Sanitary Engineer issuing this order no hearings were held; yet, this letter order contained eight statements (findings) of fact[1] which purported to support the

---

1. Those findings of fact stated:

"1. The Monongahela & Ohio Dredging Company (hereinafter

conclusion of law that Appellant, by changing the cross section of the Allegheny River, without DER permission, had violated Section 2 of the Water Obstructions Act, Act of June 25, 1913, P.L. 555, as amended, 32 P.S. §§681-691 (Act of 1913). From this order, Appellant appealed to the EHB, and in the initial adjudication the appeal was dismissed for want of subject matter jurisdiction. However, following a petition for reargument and EHB consideration of the fact that subject matter jurisdiction had been raised sua sponte thus denying the parties the chance to brief or properly argue the issue, reargument on the limited issue of jurisdiction was granted. Following argument, EHB reversed its earlier adjudication and order, finding jurisdiction to determine the matter, and finally dismissed the appeal on the merits.

―――――

'M&O'), a Delaware Corporation, is currently engaged in the practice of maintenance dredging in the Commonwealth of Pennsylvania.

"2. The Municipal Authority of the City of New Kensington has retained or employed M&O to perform maintenance dredging in the area of its water intake in the Allegheny River.

"3. In the course of said dredging, M&O removes materials situated at the bottom or bed of the Allegheny River.

"4. After removing the aforementioned materials from the river bottom, M&O places such materials in a barge for transportation to a place of disposal.

"5. Investigations by Waterways Patrolman Gerald Crayton of the Pennsylvania Fish Commission have determined that the aforementioned materials, after being transported by means of barge to a location in the Allegheny River near Sycamore Island, are or have been placed or discharged into an excavation made by M&O in the bed or bottom of the Allegheny River.

"6. Said investigations have further determined that the aforementioned materials, after being placed in said excavation, are or have been subsequently removed from said excavation by M&O for ultimate disposal on Sycamore Island.

"7. The aforementioned acts by M&O are resulting in or have resulted in change of the cross section of the Allegheny River.

"8. The aforementioned acts by M&O have been performed without the written permission of the Commonwealth of Pennsylvania Department of Environmental Resources."

Appellant frames four issues for our resolution:

1. Does the Act of 1913 authorize DER (through its Sanitary Engineers) to issue orders against dredging companies performing maintenance dredging, compelling performance which DER deems desirable under the Act?

2. Does DER under any other statute have authority to issue cease and desist orders in the manner here complained of to remedy alleged dredging violations?

3. Does DER or EHB have the duty to find the facts in a given case and limit orders to those supported by facts and the law?

4. Do the facts as found by DER justify its cease and desist order?

Initially, we may dispose of Appellant's first and second contentions. Section 2 of the Act of 1913, 32 P.S. §682 states:

"Except as provided herein, from and after the passage of this act, it shall be unlawful for any person or persons, partnership, association, corporation, county, city, borough, town, or township to construct any dam or other water obstruction; or to make or construct, or permit to be made or constructed, any change therein or addition thereto; *or to make, or permit to be made, any change in or addition to any existing water obstruction; or in any manner to change or diminish the course, current, or cross section of any stream or body of water,* wholly or partly within, or forming a part of the boundary of this Commonwealth. . . ." (Emphasis added.)

At hearing before the EHB, the parties stipulated to the truth of findings in the October 12, 1972 order[2] which, in essence, state that Appellant's dredging and excavation activities have changed the cross section of the river. It is clear that a violation of Section 2 could well have been

---

2. See note 1 *supra* for findings 5-7. It was with respect to these findings that the stipulation was entered.

found in the face of such a stipulation. However, Appellant argues that its dredging actions are free from DER regulation, citing *McCrady-Rodgers Company v. Colegrove,* 43 Dauph. 275 (1937) where the court did enjoin the Commonwealth from prosecuting the plaintiffs for non-compliance with the Water and Power Resources Board's (a predecessor to DER) demand that plaintiffs apply for a permit prior to dredging sand and gravel from Commonwealth river beds. We have carefully reviewed *McCrady-Rodgers* and disagree that it is persuasive authority. It is distinguishable at least to the extent that it predated significant amendments to the Act of 1913. The distinction is best drawn by the *McCrady-Rodgers* court's language:

> "There can be no question that the Legislature has the power to determine what can or cannot be done with the soil at the bottom of navigable streams and the power to determine that it can only be removed upon certain conditions for which licenses may be granted. The question before us, however, is whether the Legislature up to this time has invested the administrative officials of the Commonwealth with the right to exact compensation for the removal of such materials." *McCrady-Rodgers, supra,* 43 Dauph. at 288.

The court further wrote:

> "When the people of the Commonwealth have engaged, time out of mind, in a course of conduct with reference to the lands and waters of the Commonwealth without question, and in the absence of any specific legislative prohibition, it remains for the Legislature alone to make the reform needed to prohibit such course of conduct, and to change the public policy of the state in that regard. Commonwealth v. Hall, 291 Pa. 341, 352." *McGrady-Rodgers, supra,* 43 Dauph. at 289.

It is clear to us that the basis of the denial of relief to the Commonwealth in this case was premised on the

fact that as of the date of decision of that case, the Legislature had not definitely addressed the change in course, current or cross section problem.[3]

Three months after the *McGrady-Rodgers* decision, the Legislature did act to change the public policy in this area by amending the Act of 1913 with the Act of May 6, 1937, P.L. 559. Section 3 of that Act amended Section 5 of the original Act of 1913.[4] The following emphasized language represents that amendment.

"Section 5. Upon complaint, or upon its own initiative, the [Commission] *Water and Power Resources Board* shall have power to cause an investigation or examination to be made of any dam, or other water obstruction now existing or hereafter constructed. If the [Commission] *board* shall determine that such dam or water obstruction is unsafe or needs repair, *alteration or change in its structure or location,* or should be removed as being unsafe and not susceptible of repair, *or for any reason is derogatory to the regimen of the stream,* the [Commission] *board* shall, in writing, notify the owner or owners thereof to repair, *alter, change its structure or location,* or remove the same, as the exigencies of the case may

---

3. See *Warren Sand & Gravel C., Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 20 Pa. Commonwealth Ct. 186, 341 A.2d 556 (1975) where this Court reviewed the lack of regulation of dredging of navigable river bottoms.

4. The change in legislative intent from the *McGrady-Rodgers* rationale of unregulative navigable water bottoms can also be seen in the amended Section 1 of the Act of 1913, Act of June 25, 1937, P.L. 2116:

"Any right, grant or privilege heretofore or hereafter granted or given by the Commonwealth of Pennsylvania in the bed of any navigable waters within the boundaries of this Commonwealth, is hereby declared void, *whenever the same becomes or is deemed derogatory or inimical to the public interest, or fails to serve the best interests of the Commonwealth.*" (Emphasis added.)

require; such work to be commercial and proceeded with to completion within such reasonable time as may be prescribed in such notice by the [Commission] *board;* [And] *and* it shall thereupon be and become the duty of such owner or owners to comply with the provisions of such notice.

"If said owner or owners, notified as aforesaid, shall neglect or refuse to make such repairs, *alterations, change or changes in structure or location* or to cause such removal, or if said owner or owners cannot be found or determined, then [it shall be and become the duty of the Commission to] *the Board may* make such repairs, *alterations, change or changes in structure or location* or cause such removal; and the [Commission] *board* may thereafter recover, in the name of the Commonwealth, from the owner or owners, the said cost or expense, in the same manner as debts are now by law recoverable.

*"It is the legislative intent that the provisions of this act shall extend to and include all types of water obstructions, regardless of the date when they were constructed, and whether or not the same were constructed by permission, express or implied, of the Commonwealth, or any authorized agency thereof, and whether temporary or permanent, and to all changes in the course, current or cross section of any stream or body of water, whether such change be temporary or permanent. The Water and Power Resources Board is authorized and empowered to hold hearings, subpoena witnesses, perform any and all such acts, make and enforce such rules and regulations, and issue such orders, not inconsistent with this act, as it may deem necessary and proper for carrying out the purposes of this act. The Act of May 6, 1937, P.L. 559, Section 3."*

Further our Supreme Court definitely recognized the change in legislative intent in *Commonwealth of Pennsyl-*

*vania Water and Power Resources Board v. Green Springs Co.,* 394 Pa. 1, 8, 145 A. 2d 178, 182 (1958):

> "[T]he regulations of dams and other obstructions and of any changes that in any manner diminish the course, current or cross-section of the streams and rivers of the Commonwealth . . . Section 5 and 6 of the original statute emphasize the safety of the stream or water obstruction from the standpoint of danger to the lives or property of the public . . . while the 1937 amendment emphasized the additional factor of a change in the natural course of the stream which change might cause loss or damage to riparian owners . . . . The unsupervised and unregulated placement of obstructions, such as dams, in streams and rivers carries with it extremely great potentialities of a danger to the lives of persons and properties within the area."

The effect and language of this amendment is precise in regulating changes in *cross-sections,* temporary or permanent, and Appellant cannot seriously contend that acts undertaken by it resulting in changes in the cross section of the river are not presently within the purview of Section 5, 32 P.S. §685.

The question still unanswered, however, is whether DER had authority either under the Act of 1913, or some other Act, to issue the cease and desist order. Section 5 of the Act of 1913 as amended by Section 3 of the Act of May 6, 1937, 32 P.S. §685 states in relevant part:

> "The Water and Power Resources Board (DER) is authorized and empowered to hold hearings, subpoena witnesses, perform any and all such acts, make and enforce such rules and regulations, and *issue such orders not inconsistent with this act, as it may deem necessary and proper for carrying out the purposes of this act.*" (Emphasis added.)

We understand this broad language to be sufficient to vest in the DER power to issue a cease and desist order if it is supported by sufficient facts which would give rise to

a violation so that the *remedial purposes* of the act may be furthered. We dismiss Appellant's argument that the DER is without authority to issue a cease and desist order under these circumstances.

To state Appellant's third argument is to answer it. It is incumbent upon DER and EHB to find facts supportive of conclusions of law and consequent orders. Also intertwined in this third argument is a statement that the letter order to cease and desist is invalid for the lack of hearing prior to the entry of that order. We shall treat each of these contentions as separate and distinct attempts to invalidate the order.

First, we find that there was substantial evidence to support the findings of fact made in this case. Findings numbers five (5) and six (6) of the EHB, previously referred to, relating to excavation and discharge of material by Appellant are based on the testimony of Appellant's Secretary and Treasurer and the testimony of DER's engineer who is Chief of the Division of Dams and Encroachments. This evidence is obviously supportive of the findings of fact and order.

Next, we address Appellant's assertion that the issuance of the order without hearing was a denial of due process of law. In *Commonwealth of Pennsylvania v. Borough of Carlisle*, 16 Pa. Commonwealth Ct. 341, 330 A. 2d 293 (1975), we specifically affirmed the holding of *Commonwealth v. Derry Township*, 10 Pa. Commonwealth Ct. 619, 314 A. 2d 874 (1973), which validated such action without hearing so long as the determination was not finalized prior to an opportunity for hearing. *See* Section 1921-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §510-21.[5]

---

5. Section 1921-A states, *inter alia:*

"(c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person

462

We find nothing in this case which would warrant reversing our prior determination. Hearings were convened before EHB at which time Appellant could challenge the cease and desist order which is exactly the situation posed by *Borough of Carlisle* and *Derry*. Consistent with the foregoing, we must

ORDER

AND NOW, this 28th day of October, 1975, the appeal of the Monongahela and Ohio Dredging Company is hereby dismissed.

shall be final as to such person until such person has had an opportunity to appeal such action to the Environmental Hearing Board. . . ."