Commonwealth of Pennsylvania, Department of Environmental Resources *v.* Elizabeth Steward, Appellant.

494

Argued February 3, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John C. Sullivan,* with him *Nauman, Smith, Shissler & Hall,* for appellant.

*Terry R. Bossert,* Assistant Attorney General, with him *Karin W. Carter,* Assistant Attorney General, for appellee.

*Robert J. Wollet,* for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., May 17, 1976:

This is an appeal from an adjudication and order of the Environmental Hearing Board (EHB), which sustained the issuance to the Commissioners of Lycoming County (Intervening Appellee) by the Department of Environmental Resources (DER) of a permit to construct and operate a sanitary landfill on the Allenwood Prison Camp in Brady Township, Lycoming County. We affirm.

Elizabeth Steward (Appellant) frames four issues for our resolution:

1. Was the permit issued in contravention of existing statutory authority, in that DER officials are required to comply with the Act of July 19, 1974, P.L. 486, 65 P.S. §261 et seq., colloquially, the Sunshine Law?

2. Was there a valid waiver of the requirements found in Regulation Sections 75.84 and 75.113[1]?

3. Did DER deny Appellant procedural due process in reviewing the application for the issuance of a permit?

4. Did DER act arbitrarily and capriciously in issuing a permit for a polyvinyl chloride (PVC) membrane-lined landfill?

---

1. 25 Pa. Code §75.84, 75.118. Regulation Sections 75.118 and Section 75.84 were promulgated by the Secretary pursuant to the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended,* 35 P.S. §6001 et seq., and the Act of June 22, 1937, P.L. 1937, *as amended,* 35 P.S. §691.1 et seq. (Clean Streams Law.)

Initially, Appellant argues that the issuance of a permit by the Division of Solid Waste Management is in the nature of a deliberation[2] as contemplated by the Sunshine Law. Since it is admitted no public notice was given, she contends the permit is invalid.[3] Further, she argues EHB, when confronted with these facts, erred when it dismissed her contention on the ground of lack of jurisdiction. We disagree.

The EHB properly concluded that it lacked jurisdiction to resolve this issue. Section 9 of the Sunshine Law, 65 P.S. §269, is unequivocal in providing:

> "The Commonwealth Court shall have original jurisdiction of actions involving State agencies and the courts of common pleas shall have original jurisdiction of actions involving other agencies to render declaratory judgments or to enforce this act, by injunction or other remedy deemed appropriate by the court. The action may be brought by any person in the judicial district where such person resides or has his principal place of business, where the agency whose act is complained of is located or where the act complained of occurred."

Assuming, *arguendo*, the Sunshine Law issue was properly before EHB, a review of the record discloses

---

2.    Appellant alleges that deliberations by Department heads which led up to the issuance of the permit is "formal action." Section 1 of the Sunshine Law, 65 P.S. §261 defines "formal action" to be:

> "[T]he taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy. Meetings, pre-trial conferences, hearings, and formal action by the judiciary or judicial branch shall not be subject to the provisions of this act."

3.    Section 2 of the Sunshine Law, 65 P.S. §262, provides:

> "The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting."

that the decision to issue a permit is not the type of "formal action" contemplated by the Sunshine Law. There is no dispute that DER is an agency as defined by the Sunshine Law.[4] However, the pivotal question is whether the determination by the Director of the Bureau of Land Protection was "formal action."

Testimony before EHB disclosed that neither a vote was taken nor official policy set by the Director issuing the permit. Moreover, mere consultation with subordinates does not constitute a meeting and does not mitigate his exclusive final authority to deny or issue permits.[5]

---

4. Section 1 of the Sunshine Law, 65 P.S. §261, defines "agency" to be:

"[A]ny branch, department, board, authority or commission of the Commonwealth of Pennsylvania, any political subdivision of the Commonwealth, or any State, municipal, township or school authority, school board, school governing body, commission, the board of trustees of all State-aided colleges and universities, the board of trustees of all State-owned and State-related colleges and universities and all community colleges, or similar organization created by or pursuant to a statute which declares in substance that the organization performs or has for its purpose the performance of an essential governmental function: Provided, That the term 'agency' shall include the General Assembly, or any State department, board, authority or commission to include the governor's cabinet when meeting on official policy making business."

5. Attorney General Packel, in his Opinion No. 46 dated September 12, 1974, 4 Pa. B. 2054, 2055, in analyzing the concept of meeting wrote:

"This concept does not include a conference or other gathering at which one individual, such as the head of a department, is going to make a determination or is soliciting information or suggestions from other officers, investigators, or employes. Nor does it include meetings among staff members who themselves do not sit on the formal parent body. In either case, the staff members and their counterparts do not participate in the ultimate decision to adopt or reject a particular course of action or suggestion . . . ."

To illustrate this concept, the Attorney General hypothsized and answered:

Accordingly, Appellant's initial contention that the permit was issued in contravention of statutory law is without merit.

As to Appellant's second contention, Regulation 75.118, 25 Pa. Code §75.118, provides:

> "The depositing of solid waste shall be prohibited in areas where continuous or intermittent contact occurs between solid waste and the ground water table. *This prohibition may be waived by the Department provided special requirements are met.*" (Emphasis added.)

She argues the final sentence of this regulation was used by DER not only to waive the requirements of the section itself, but also the requirements of the subchapter. This is a misinterpretation of the regulation. The waiver provision in Section 75.118 applies to the preceding sentence. It is clear from our review of the record that the waste placed in the landfill will not come in contact with the ground water table. Therefore, there is no necessity to waive the requirements of Section 75.118. In fact, the data submitted as part of the record discloses the waste will be contained inside a 20-millimeter PVC membrane liner and will not be in contact with any ground water. Additionally, the ground water will be collected and routed away from the landfill by a system of interceptor trenches and underdrains. There being no contact between the waste and ground water, the provisions of Section 75.118 are inapplicable. Appellant also argues Section 75.84, 25 Pa. Code §75.84, of the Regulations has not been complied with. This section must be complied with or waived in order for a permit to issue.

---

"(a) Department Head X meets with two staff members (or Deputy Secretaries or private citizens) to discuss a certain problem the Department is facing. Do the open meeting sections of the act apply? No."

The section sets forth specific criteria for the prevention of ground water pollution.[6] If these criteria cannot be met, it is alleged subsection (g) will operate as a waiver, provided, "leachate collection and treatment facilities are approved" by DER. The record discloses the landfill will have a sophisticated facility for leachate collection and treatment, which has met the approval of DER. Section 75.84 has been complied with and so Appellant's second contention is without merit.

Next, we address Appellant's assertion that she was denied procedural due process before DER. In *Commonwealth v. Borough of Carlisle,* 16 Pa. Commonwealth Ct. 341, 330 A. 2d 293 (1975), we specifically affirmed the holding of *Commonwealth v. Derry Township,* 10 Pa. Commonwealth Ct. 619, 314 A. 2d 874 (1973), which validated action without hearing so long as the determination was not finalized prior to an opportunity for

---

6. Section 75.84 of the Regulations, 25 Pa. Code §75.84, provides:

"(a) To assure that there is no risk of free flow to ground water, sites with less than six feet of fine soil over limestone or other fissured rocks, or coarse sand and gravel shall be considered unsuitable.

"(b) A site with six or more feet of fine soil over limestone or other fissured rocks, or coarse sand and gravel is classed in the range of limited suitability.

"(c) Depth to the seasonal highwater table shall be greater than six feet from the bottom of the lowest refuse lift. The depth shall be increased by at least six feet for each additional lift depending on the character of the earth material.

"(d) The site shall not have a flooding hazard of greater frequency than once in 50 years.

"(e) The site shall be designed and operated in a manner which will manage surface water percolation.

"(f) Direct fill into water or flood plain shall not be permitted.

"(g) Sites not meeting the above specifications or subsections (a)-(f) of this section for the prevention of ground water pollution may be utilized if leachate collection and treatment facilities are approved by the Department."

hearing. *See* Section 1921-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §510.21. We find nothing in this case which would warrant sustaining Appellant's allegation. Hearings were convened before EHB at which time Appellant could challenge the issuance of the permit. *Department of Environmental Resources v. Monongahela and Ohio Dredging Co.,* 21 Pa. Commonwealth Ct. 453, 461, 346 A. 2d 879, 883 (1975) ; *Warren Sand and Gravel v. Department of Environmental Resources,* 20 Pa. Commonwealth Ct. 186, 203, 341 A. 2d 556, 565 (1975).

Finally, it is argued that DER acted arbitrarily and capriciously in approving the use of a PVC membrane liner. In cases when an appeal is taken from DER to EHB, EHB is required to conduct a hearing *de novo.* This Court will then review that adjudication to determine if constitutional rights were violated, if it is in accord with the law, and findings of fact are supported by substantial evidence.[7] *East Pennsboro Township Authority v. Department of Environmental Resources,* 18 Pa. Commonwealth Ct. 58, 334 A. 2d 798 (1975) ; *Department of Environmental Resources v. Leon E. Kocher Coal Company,* 9 Pa. Commonwealth Ct. 110, 305 A. 2d 784 (1973).

The EHB, in reviewing the actions of DER, found, *inter alia* :[8]

"4.   The permit is conditioned upon inspection of the facility by DER and certification by a professional engineer that the site has been constructed in accordance with the plans prior to the operation of the site.

. . . .

"12.   Before approving the liner, DER engaged in an extensive review of the research data concerning

_____

7. *See* Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.44.

8. EHB, in its opinion written by its Chairman on August 7, 1975, made forty findings of fact.

PVC and its prior use and a review of the data concerning the quality ranges of leachate, and discussed these findings with those working in the respective fields. DER also observed existing facilities already constructed or being constructed which use PVC as a liner material, and drew upon prior experience with PVC in landfills and other construction uses.

. . . .

"16. Appellants failed to prove by their testimony and evidence that the proposed Lycoming County Solid Waste Landfill would deposit solid waste in areas where there would be continuous or intermittent contact between solid waste and groundwater.

. . . .

"19. The proposed Lycoming County Landfill concept of overdrains, liner and underdrains is the best concept presently available to prevent mixing of leachate and groundwater.

. . . .

"23. The underdrain system of the proposed landfill will be monitored to detect any occurrence of leachate below the level of the PVC liner.

. . . .

"25. The proposed landfill design includes four designed protective measures to prevent leachate from entering the groundwater as follows: (1) A 12 inch layer of compacted low permeability native soil which would tend to divert leachate to a series of sand filters and collection pipes known as overdrains; (2) Beneath the 12 inch layer a 6 inch layer of sand under which would be (3) A 20 mill impermeable PVC liner under which would be (4) A 12 inch layer of highly permeable sand interspersed by a series of perforated collection pipes known as the underdrain system, on top of undisturbed law permeability glacial till, and the site provides four natural protective features as follows: (1) A thick mantle of compact glacial till overlying bedrock; (2)

The site is a groundwater discharge area for water moving in the glacial till; (3) A low permeability bedrock; and (4) The groundwater in the bedrock is under artesion pressure.

. . . .

"26. The leachate collection and containment system proposed by Lycoming County involves a containment and collection system, a lagoon, an aerator, and recirculation of the leachate to the landfill.

"27. Extensive topographic, hydrogeologic and geologic surveys and studies were made of the proposed landfill site to determine its suitability for solid waste disposal.

"28. The proposed Lycoming County Landfill site is hydrologically isolated from the area known as the "Sinks" and the Allenwood Fair Grounds.

. . . .

"33. The groundwater monitoring system for the proposed landfill is adequate to detect any malfunction in the environmental safeguards system, as well as to allow removal by pumping of any escaping leachate.

. . . .

"35. Aeration of leachate at the lagoon and recirculation of leachate by spraying onto the landfill would tend to remove fifty per cent of the biological pollutants from the leachate, and such procedure is a form of treatment of leachate.

. . . .

"38. As PVC loses its plasticizer with time, the tinsile strength increases.

. . . .

"40. The application of the Lycoming County Board of Commissioners for a landfill permit sets forth sufficient and adequate information from which DER could properly evaluate and, based upon which, DER could properly issue permit number 100963."

Our exacting review of the voluminous record compels us to conclude that the adjudication, as exemplified by the foregoing detailed findings, is supported by substantial evidence; and further, Appellant was not denied due process of law, nor was the permit issued arbitrarily and capriciously. Therefore, we

ORDER

AND NOW, this 17th day of May, 1976, the adjudication of the Environmental Hearing Board is affirmed.

Judge KRAMER did not participate in the decision in this case.