William Weder and Palisades Taxpayers' Association, Appellants *v.* Pennsylvania Department of Education. School District of Palisades, Intervening Appellee.

Argued September 9, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate.

*John M. Demcisak,* for appellants.

*Gerald Gornish,* Deputy Attorney General, with him *Sally A. Lied,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

*Ross Van Denbergh,* with him *Frederick H. Ehmann, Jr.; Samuel G. Moyer;* and, of counsel, *Power, Bowen & Valimont;* and *Saul, Ewing, Remick & Saul,* for intervening appellee.

OPINION BY JUDGE ROGERS, October 27, 1976:

This case is one episode, hopefully at worst the penultimate, of a long-standing dispute between the appellee, Board of School Directors of the School District of Palisades, Bucks County, and the appellants, William Weder, a taxpayer and sometime Palisades School Director and the Palisades Taxpayers Association, a public interest nonprofit corporation. The School District has for several years intended to construct a new middle school and to renovate and alter an existing high school building. The appellants have steadfastly opposed this project because, in their opinion, the construction of a new elementary school would be a more reasonable and less costly alternative. In this appeal, the primary contention of the disaffected taxpayers is that the Department of Education's final approval of the School District's building plan is void because of alleged violations of provisions of the so-called "Taj Mahal" Act[1] and the so-called "Sunshine Law"[2]

This is the second time appellants have sought review of the Department's actions. In September of

---

[1] To a generation taught that the Taj Mahal at Agra is the epitome of Indian architectural beauty, the vulgarity of the use of the building's name as a code word for extravagance in public works is beneath condemnation. In any case the Act consists of one addition (to Section 701.1), several amendments (to Sections 731, 733 and 735) and the repeal of Section 734, of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1.101 et seq. The provisions of the "Taj Mahal" Act, the Act of June 27, 1973, P.L. 75, may be found at 24 P.S. §§7-701.1, 7-731, 7-733, 7-734, 7-735.

[2] Act of July 19, 1974, P.L. 486, 65 P.S. §261 et seq.

1975, this Court quashed their earlier appeal, in which they complained of the form of the hearing accorded them by the Department. Judge WILKINSON, in a heretofore unpublished opinion, wrote:

This matter is before the Court, on briefs, for disposition of a motion to quash the appeal. Several reasons were given supporting the motion to quash, but since one is determinative, it is unnecessary to pass upon the others. The one that is determinative is that there is no appealable adjudication from which this appeal could be taken.

There has been a long-standing difference of opinion between the appellants and the intervening appellee as to the wisdom of proceeding with a planned construction program. Despite the opposition of appellants, intervening appellee has proceeded with its plans and, as far as the record reveals, has been in compliance with the requirements of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101 et seq. Specifically, the record reveals that intervening appellee is proceeding within the requirements of the so-called "Taj Mahal" Act, being the Act of June 27, 1973, P.L. 75, No. 34, 24 P.S. §7-731. Appellants drew the attention of the Department of Education to what they considered bad judgment, if not bad faith, on the part of intervening appellee in proceeding with the project in opposition to what it considered to be the recommendation of a study made by the Pennsylvania Economy League.

In accordance with the authority granted it by the Public School Code, 24 P.S. §7-731, as part of its investigation, the Department of Education conducted what it denominated a hearing. It certainly was not a due process hearing; indeed, it was not adversary in nature but rather investigatory. Its

conclusion was that the Department found no reason to caution intervening appellee against proceeding. Actually, there was no issue before the Department of Education upon which it could make an appealable adjudication at that time.

It seems appropriate to point out that at the beginning of the so-called hearing, it was made abundantly clear that its purpose was merely to gather information from what was called a variety of sources in order to put the Department of Education in a better position to make a final decision when the appropriate time came.

Ultimately the issue of whether the Department of Education will grant its approval to these projects will come before the Department. When that decision is made, it will be an adjudication.

The Department has now given its final and formal approval to the proposed project denominated an adjudication by Judge WILKINSON, and here treated as such.

On the merits of the action of the Department in approving the School District's building plans, complained of by the appellants throughout their brief, it becomes our only duty to consider whether the School District complied with "Taj Mahal" and whether it let the "Sunshine" in. We believe it did both and will affirm.

The appellants advance as a violation of "Taj Mahal" that the Department's action approving the project is void by reason of the Department's having held a hearing without making available to the appellants the right to subpoena witnesses[3] or the right to

---

[3] The appellants fail to disclose who or what they would have subpoenaed if the right had been accorded. One of their principal complaints on the merits is that the District's plan approved by the Department had been adversely treated in a Pennsylvania Econo-

cross-examine witnesses. These actions, they assert, violate Sections 31 and 32 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S.§§1710.31, 1710.32, and the "Taj Mahal" Act. They are answered by Judge WILKINSON's opinion in the earlier case in support of our holding that the hearing conducted by the Department was investigatory, not adversarial and that therefore the appellants' complaints concerning their alleged rights as parties to a lawsuit were without merit. *See City of Pittsburgh v. Insurance Department of Pennsylvania,* 448 Pa. 466, 294 A.2d 892 (1972).

Next, the appellants assert that the Department's failure to require the School District to present and make public a cost analysis of possible alternatives and to make findings of fact on the feasibility of such violates Section 3 of the "Taj Mahal" Act.[4] It is clear, however, that there is no language in that Section which suggests that the Legislature intended to impose such duties on the District. The first part of Section 3, 24 P.S. §7-731, grants certain powers to the Department of Education and imposes certain duties, none of which are relevant to this issue. The second portion of the section, 24 P.S. §7-733, requires that all buildings shall conform to public school standards established by the State Board of Education. Nowhere is there mention of the alleged requirements appellants say the Act imposes. Moreover, it is clear that the purpose of the Act is not to interfere with the School Board's responsibility to determine when and if a new facility is necessary. Rather, its purpose

---

my League study. At the Department's investigatory hearing the appellants made no effort to adduce the statement of anyone from the League, but did introduce into the record with leave of the Hearing Officer the League's written report.

[4] 24 P.S. §§7-731, 7-733.

is a limited one, to eliminate the waste of public monies in school construction projects.

Section 3 of the "Taj Mahal" Act, 24 P.S. §7-733(a) requires the Department to consider "the financial capacity of the applicant to sustain and maintain the obligation of indebtedness." The appellants claim that this phrase necessarily includes the financial capacity of the taxpayers and that the Department therefore erred by failing to require the School District to demonstrate the taxpayers' ability to absorb the cost of the project. We do not understand how this interpretation would in any way benefit appellants. Evidence in the record demonstrates that the capacity of the School District to finance the project was adequately reviewed by the Department, and inherent in any such review is consideration of the financial ability of the taxpayers of the district to carry the load.

Lastly, appellants suggests that it is the obligation of the Department of Education to render all of its decisions at a public hearing pursuant to the requirements of the "Sunshine Law." Section 2 of that Act, 65 P.S. §262, requires that any meeting or hearing at which "formal action" is scheduled or taken shall be open to the public. Section 1, 65 P.S. §261, defines formal action as "the taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy." The appellants of course say that the Department's approval of the school building project given by writing to the District constitutes "formal action." This Court recently held that the grant by the Department of Environmental Resources of a landfill permit in circumstances strikingly similar to those here was not "formal action" within the meaning of the "Sunshine Act." *Pennsylvania Department of Environmental Resources*

*v. Steward*, 24 Pa. Commonwealth Ct. 493, 496-497, 357 A.2d 255, 257-258 (1976). Here the Department of Education's approval was the culmination of a purely administrative process and was not formal action such as would require it to be announced at a public meeting of the Department or a part thereof.

Although the administrative process has been completed, appellees would have us quash this appeal on the ground that appellant taxpayers lack standing to challenge the Department's approval. Since the appellants participated below, we conclude that they have standing to appeal by virtue of Section 41 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.41. *See Insurance Department v. The Pennsylvania Coal Mining Association*, 25 Pa. Commonwealth Ct. 3, 358 A.2d 745 (1976).

ORDER

AND Now, this 27th day of October, 1976, it is ordered that the appeal of William Weder and Palisades Taxpayers' Association be and it is hereby dismissed.