## Commonwealth v. Williams

*Louis A. Naugle*, for Commonwealth.
*S. R. DiFrancesco, Sr.*, and *Fremont McKenrick*, for defendants.

O'KICKI, *J.*, August 3, 1979—The issue in this case is whether a court of common pleas is compelled by law to rubber-stamp and enforce a default administrative order of a governmental agency without applying ordinary principles of equity. It is an examination of the facts and administrative proceedings giving rise to the enforcement petition which was presented to the court. Plaintiff, Department of Environmental Resources (DER), brought the instant complaint in equity to seek enforcement of an administrative order of DER which was issued pursuant to section 8 of the Pennsylvania Water Obstructions Act of June 25, 1913, P.L. 555, 32 P.S. §688. That section of that law provides: "Upon application of the commission, verified by oath or affirmation, the court of common pleas of any county, sitting in equity, may, by injunction,

enforce the compliance with, or restrain the violation of, any order or notice of the commission made pursuant to the provisions of this act, or restrain the violation or attempted violation of any of the provisions of this act."

After the filing of the petition, the respective defendants answered each and every one of the allegations that were relevant to the issues involved. DER filed its motion for judgment on the pleadings. The trial court entered its findings and order as follows:

"FINDINGS AND ORDER

"From the pleadings, and after arguments of counsel at hearing, the court makes the following findings:

"1. This proceeding is properly before the court sitting in equity, which said court has original jurisdiction in this matter.

"2. As a court in equity, applying all proper equitable principles of law to the subject matter, determination is to be made as to legality of enforcing an administrative order of the Pennsylvania Department of Environmental Resources imposed upon the within defendants, compelling them, under penalty of contempt, to drain Cresson Lake so as to prevent further impounding of water.

"3. The court has been made aware of the fact that Cresson Lake has been established since 1910, and that the water impounded therein has not caused damage or threat of damage to area residents, although time has caused deterioration of Cresson Lake's spillway and breastwork to some extent.

"4. It has been suggested by competent source, and argued as such by counsel for defendants that

in fact the area is not residential nor occupied downstream with homes, dwellings, or improvements for considerable distance from said dam.

"5. The record is devoid of any evidence, other than a default judgment against defendants at the administrative law level, that life, property, health, and safety are endangered presently by said dam.

"6. The enjoining of defendants to drain the lake and rebuild its breastwork and spillway will obviously involve considerable financial expenditures.

"7. The court is reluctant to affect arbitrarily the property rights of defendants upon a record unsupported by any evidence that such drastic action is warranted under the circumstances.

"8. The merits of the position of either side in this controversy are not established in the record before the court; at the same time the court considers plaintiff's administrative order of August 15, 1977, to be an ex parte determination of the situation, defendants having been unrepresented and having exercised no appeal from said departmental directive.

"9. This being an equitable proceedings, equity demands some basis for action other than what is currently in the record in this proceeding at this time.

"10. The court finds that evidentiary proof is readily available to both parties in support of their respective positions and that said proof could and should be incorporated into the record prior to any further or final decision.

"Accordingly, the court enters the following order:

"And now, January 19, 1979, the motion of plaintiff that judgment be entered on the pleadings is

denied, with the stipulation that the plaintiff and the defendant present their respective testimony at a continued hearing before this court, all other proceedings stay meanwhile.

"BY THE COURT
"/s/ O'Kicki"

It is patently self-evident from examination of the trial court's order that a naked order without any record whether in the trial court or in the administrative agency is interlocutory and insufficient to support either a motion for summary judgment on the pleadings or for the issuance of an injunction to insure compliance with the administrative order. The next patently self-evident legal matter is whether such an unsupported default DER order has such exalted status as to preclude any court review of the procedure or the determination underlying such order. The teachings and guideposts of the appellate courts are many. In DER v. Monongahela and Ohio Dredging Co., 21 Pa. Commonwealth Ct. 453, 461, 346 A. 2d 879 (1975), the court said: "It is incumbent upon DER and EHB to find facts supportive of conclusions of law and consequent orders." An examination of this record reveals that no transcript of facts has been placed in the record, thus flying in the face of Monongahela.

Further, DER v. L. E. Kocher Coal Co., 9 Pa. Commonwealth Ct. 110, 112, 305 A. 2d 784 (1973), set out the general areas of review by a court of the final order of the DER. The court said: "Our scope of review in an appeal from the Board is limited to whether constitutional rights were violated, an error of law was committed, or any necessary findings of fact was not supported by substantial evidence." The court went on to require that facts be

supported by objective scientific tests where that was possible. Likewise, in Bortz Coal Company v. Com., 2 Pa. Commonwealth Ct. 441, 458, 279 A. 2d 388 (1971), the appellate courts have set further the requirements of proof that apply to bureaucratic officials and bureaucratic agencies:

"Somehow, regulatory agencies such as the Air Pollution Commission and its employes, take the attitude that because they represent the government, there is no need for them to prove facts, except as established by the estimates and observations of their experts. Merely because the Commonwealth employs experts in the various fields of regulation does not necessarily mean that the Commonwealth need not prove its case. In the event it should occur in a case that there is no scientific measurement instrument, or no method of determining a violation, then, as in all adjudicated matters in this Commonwealth, violations will have to be determined upon the weight of the evidence produced. However, where there are available established methods for determining violations, those methods must be used."

Even if this were a case in which the agency had a proper default judgment which was properly placed in evidence before the court and supported by factual evidence in the record (either trial court or administrative agency record), there is a serious question whether such an order is entitled to a more exalted position in the law than that of default judgments entered against individual citizens in civil cases. It is a fundamental principle of the law of equity that a trial court has discretion to exercise in any default judgment case where a petition to

open judgment is presented. In the landmark case of Ehnes v. Wagner, 388 Pa. 102, 130 A. 2d 171 (1957), the Supreme Court said:

"A petition to open judgment is addressed to the sound discretion of the court below, whose action will not be reversed on appeal unless an abuse of that discretion appears: Gagnon v. Speback, 383 Pa. 359, 362, 118 A. 2d 744. To open judgment, the petitioner must not only cover a valid defense but must also establish equitable considerations which impress the court with the need for relief: Lened Homes, Inc. v. Philadelphia Department of Licenses and Inspections, 386 Pa. 50, 53, 123 A. 2d 406. There must be more than a mere conflict of evidence, or oath against oath, but '. . . such evidence as would persuade the court that, upon submission of the issue to a jury, a verdict in their favor could be upheld.': Ahrens v. Goldstein, 376 Pa. 114, 121, 102 A.2d 164."

Further, expanding on Ehnes, supra, the Pennsylvania Superior Court in Sprouse v. Kline-Styer-McCann Post 7155, Veterans of Foreign Wars, 237 Pa. Superior Ct. 419, 352 A. 2d 134 (1975), set out three criteria to open judgments: (1) that the petition to open be filed promptly; (2) that the default be reasonably explained or excused; and (3) that a defense on the merits be shown. In addition, in that Sprouse case, the case of Balk v. Ford Motor Co., 446 Pa. 137, 285 A. 2d 128 (1971), was cited with approval at page 424: "[W]here the equities are clear, a good defense need not be posited to have the judgment opened in a trespass action. However, that court also noted that a good defense can qualify as an equitable consideration favoring the opening of the judgment."

In Sta-Rite Industries v. Century Water Treating, 230 Pa. Superior Ct. 285, 326 A. 2d 425 (1974), it was held that the opening of a judgment was in the court's discretion, and that the lack of legal expertise of a widow attempting to carry on her husband's business was a sufficient equitable consideration to open the judgment. The Pennsylvania Supreme Court summarized the equitable considerations that govern the discretionary opening of a judgment by stating:

"In determining whether a judgment by default should be opened, we must ascertain whether there are present any equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his 'day in court' and to have the cause decided upon the merits. In so doing, we act as a court of conscience." Kraynick v. Hertz, 443 Pa. 105, 277 A. 2d 144 (1971).

DER maintains in its brief that the instant case is governed by the holdings in DER v. Bethlehem Steel Corp., 469 Pa. 578, 367 A. 2d 222 (1976), and DER v. Wheeling-Pittsburgh Steel Corp., 473 Pa. 432, 375 A. 2d 320 (1977). Both the Bethlehem and Wheeling-Pittsburgh cases are inapplicable to the present factual issues and legal procedures. Both Bethlehem and Wheeling-Pittsburgh involved the enforcement of a consent order (after parties had had sufficient time to resolve or litigate the factual issues) pending an appeal from the issues which were still undetermined and unresolved. Nothing in the Bethlehem case is supportive of DER's position that the Commonwealth Court (or in this in-

stant case, the common pleas court) is required to rubber-stamp the DER position and findings. In Wheeling-Pittsburgh, supra, both parties participated in extensive negotiations and proceedings in 1972; at that time Wheeling-Pittsburgh had obtained a variance from enforcement of DER regulations concerning air pollution standards until the year 1973. In 1975, DER sought to enforce the order containing items involving the variance. In that Wheeling-Pittsburgh case defendant had taken part in the preliminary determination of the factual and legal procedural issues involved. In this instant case, there has been absolutely no participation whatsoever until DER has sought the jailing of defendants through the issuance of a contempt ruling. In both the Bethlehem and Wheeling-Pittsburgh cases, supra, the issue of factual polluting was conceded by preliminary negotiation, consent order and various other pleadings. No such concession exists in this case. Likewise, in the Bethlehem and Wheeling-Pittsburgh cases, DER dealt with national business corporations which had the benefit of engineering as well as legal experts. In the instant case, we are concerned with the rights of a farmer and a local part-time real estate developer who just happened to be the landowners involving a 1910 gristmill dam which is subject to this DER action. In the Bethlehem and Wheeling-Pittsburgh cases, that court points out that the issues involved are those of a "highest public importance," citing article I, sec. 27 of the Pennsylvania Constitution and the Clean Air Act Amendments of December 31, 1970, 84 Stat. 1676, 42 U.S.C.A. §1857 et seq. [see now 42 U.S.C.A. §7401 et seq.].

All that this common pleas court asked DER to do in the instant case is to produce its evidence. The order of January 19, 1979, asks for nothing more.

This court cannot adhere to or accept DER's position that regulations and/or certain narrow case decisions (not on point) can change the Constitution of Pennsylvania and deprive the common pleas court of its inherent and common law equity discretion in resolving and determining requests for injunctive relief. This attempted amendment of the Constitution by overexpansion of the powers of DER through court decision cannot and will not be accepted by this common pleas court.