Morcoal Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued January 31, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Allan E. MacLeod, Wymard & Dunn,* for petitioner.

*Diana J. Stares,* with her, *Ward T. Kelsey* and *Elissa A. Parker,* for respondent.

OPINION BY JUDGE ROGERS, May 4, 1983:

Morcoal Company has filed a petition for review of an order and adjudication of the Environmental Hear-

ing Board (EHB) upholding the action of the Department of Environmental Resources (DER) forfeiting bonds covering surface mining sites allegedly abandoned and unreclaimed by Morcoal and denying Morcoal's surface mining license for the year 1980.

Prior to 1979, Morcoal held a license as a surface mining operator in Pennsylvania and operated five surface mines in Westmoreland County. Before commencing coal mining operations on each of the five sites, Morcoal applied for, and received from the DER, mine drainage and mining permits under the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§691.1-691.1001 (Clean Streams Law) and the Surface Mining and Conservation Act, Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§1396.1-1396-25 (Mining Act). Additionally, Morcoal posted performance bonds with its applications for the mining permits pursuant to Section 4 of the Mining Act, 52 P.S. §1396.4(d). The parties have stipulated that the condition of each of the bonds was that if Morcoal should perform all of the requirements of the Mining Act, the Clean Streams Law, the rules and regulations of the Environmental Quality Board, and the provisions and conditions of the permits the obligation should be void; otherwise to remain in full force and effect. The aggregate amount of the forfeitures seems to be $47,000.00.

At each of the five sites, Morcoal removed coal from the site creating vast open pits and then abandoned the mines, removing all mining and earthmoving equipment. Morcoal reclaimed none of the sites. At one site, two pits were left open, exposing highwalls thirty feet high and, according to the testimony of a mine inspector for the DER, attracted children who swim in the accumulated pool of acid drainage. At another site, Morcoal left behind an open pit, which

is subject to landslides, erosion, and untreated discharges of acid mine drainage. At still another site, Morcoal's subcontractor, upon discovering that the coal did not meet its buyer's requirements, abandoned the site with no erosion controls or revegetation, causing silting of a nearby stream. On a site called Special Project 506 where Morcoal was to reclaim a previously-mined area within six months of permit issuance, Morcoal not only failed to reclaim the site, but abandoned it after removing coal and destroying land previously suitable for cultivation.

On July 23, 1979, the DER filed a complaint against Morcoal in this Court pursuant to The Clean Streams Law and the Mining Act. On October 10, 1979 this Court issued an injunction against Morcoal requiring it to pump, collect and treat acid mine drainage on the site covered by one of the permits.

Notice of the bond forfeitures was sent to Morcoal on or about November 19, 1979. Morcoal failed to correct violations cited by DER mine inspectors or to complete reclamation work in the bonded areas. Despite the forfeiture action taken by the DER and the denial by the DER of Morcoal's 1979 license application, which was never appealed, Morcoal applied for a 1980 surface mining operator's license which the DER of course denied. As noted, the EHB upheld DER's action and this appeal followed. At oral argument in this Court, Morcoal conceded that the matter of the denial of its application for the 1980 license was moot.

The appellant states six principal questions for our consideration:

 I Whether the bonds at issue are indemnity bonds or penal bonds;

 II Whether the DER action comported with due process;

III  Whether the bonds for one of the sites should have been forfeited when Morcoal had entered into a private contract with another company, granting that company its mining rights;

IV  Whether the EHB has the discretion to review the choice of enforcement methods utilized by the DER;

V  Whether nonrenewal of its 1980 license prevented reclamation;

VI  Whether there was substantial evidence which would show that Morcoal was not in compliance with the October 10, 1979 order of this Court prior to DER's revocation of the bonds.[1]

## I

Morcoal contends that the bonds are indemnity bonds so that DER was required to prove actual damages sustained in order to collect.  DER argues that the bonds are penal and, therefore, damages need not be established in order to recover the full amount of the bonds upon their forfeiture.

We held in *American Casualty Co. v. Commonwealth Department of Environmental Resources*, 65 Pa. Commonwealth Ct. 223, 441 A.2d 1383 (1982) that the "nature of the bonds must be determined from the language of the bond as well as the [Act]," *id.* at 234, 441 A.2d at 1388-89, and also stated that:

---

[1] Morcoal also contends that EHB made erroneous rulings with respect to the admission of evidence.  We have reviewed these complaints and find them to be without merit if not disingenuous..  As examples, Morcoal insists that testimony of persons at the trial of another matter should have been admitted although the persons were not shown to be unavailable, and that DER should be bound by the testimony of a witness properly called by it as if on cross-examination.

As a general rule, and in the absence of provisions to the contrary, where a bond is given to a public body and is conditioned on compliance with a specific statute, the full penalty of the bond may be recovered in the event of a breach. Fresh Grown Preserves Corp. v. United States, 144 F.2d 136 (4th Cir. 1944) and 12 Am. Jur. 2d Bonds §44 (1964). The reason for this construction was set forth in Commonwealth v. J. & A. Moeschlin, Inc., 314 Pa. 34, 44, 170 A. 119, 123 (1934) as follows: "[D]amages to the obligee would in such circumstances be difficult or impossible of ascertainment and proof, and hence in such cases it is said that the parties will be held to have intended that the full sum named should be forfeited."

*Id.* at 234, 441 A.2d at 1389.

The Mining Act, as does the Anthracite Strip Mining and Conservation Act[2] interpreted in *American Casualty Co.*, requires the filing of bonds conditioned on the faithful performance of all of the Mining Act's requirements. Section 4 of the Mining Act, 52 P.S. §1396.4(h) provides that:

If the operator fails or refuses to comply with the requirements of the act in any respect for which liability has been charged on the bond, the department shall declare such portion of the bond forfeited, . . . and shall direct the State Treasurer to pay said funds into the Surface Mining Conservation and Reclamation Fund, or to proceed to sell said securities to the extent forfeited and pay the proceeds thereof into the Surface Mining Conservation and Reclamation Fund. . . .

---

[2] The Act of June 27, 1947, P.L. 1095, *as amended*, 52 P.S. §§681.-1-681.22.

Section 18 of the Mining Act, 52 P.S. §1396.18, directed that all funds from the forfeiture of bonds and held in the Surface Mining Conservation and Reclamation Fund shall, if possible, be expended:

for reclaiming and planting the area of land affected by the operation upon which liability was charged on the bond. Any funds received from such forfeiture in excess of the amount which is required for reclaiming and planting the area of land affected by the operation upon which liability was charged and funds received from forfeitures relating to land where reclaiming and planting is to be determined by the secretary to be physically impossible may be used for the foresting or reclaiming of other lands affected by surface mining of any coal or metallic and nonmetallic minerals or for any other conservation purposes provided by this act.

The obligation set forth in the bonds is compliance with all the requirements of the Mining Act.

Neither the bonds nor the Mining Act require proof of actual damages sustained prior to collection on the bonds. The Mining Act clearly allows forfeiture and collection of the bonds for the failure to comply with the requirements of the Mining Act. Although our review of the record reveals that the actual cost of reclamation could be proved, the intent of the Mining Act is, we believe, that the bonds are penal and, therefore, the DER is not required to prove damages actually sustained in order to collect on the bonds.

II

Next, Morcoal says that it was denied procedural due process when DER forfeited the bonds without prior hearing. The procedures employed by the DER in this case are expressly allowed by Section 1921-A-

(c) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §510-21(c) which provides in pertinent part that:

> (c) [A]ny action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; . . . .

*See Commonwealth v. Coward,* 489 Pa. 327, 332, 414 A.2d 91, 96 (1980) (orders made by the DER do not become final until adversely affected party has opportunity to appeal to EHB). *See also Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.,* 473 Pa. 432, 442, 375 A.2d 320, 324 (1977); *Department of Environmental Resources v. Steward,* 24 Pa. Commonwealth Ct. 493, 357 A.2d 255 (1976); *Department of Environmental Resources v. Borough of Carlisle,* 16 Pa. Commonwealth Ct. 341, 330 A.2d 293 (1974); *Department of Environmental Resources v. Derry Township,* 10 Pa. Commonwealth Ct. 619, 314 A.2d 874 (1973). Here, although the DER issued the forfeiture orders without a hearing, a later hearing before the EHB was available and of which Morcoal availed itself. *See* Section 4 of the Mining Act, 52 P.S. §1396.4(h).[3]

### III

Morcoal next contends that its bonds for one of the bonded sites—the Kalp site—should not have been for-

---

[3] Section 4 of the Mining Act, 52 P.S. §1396.4(h) reads in pertinent part that:

> Any operator aggrieved by reason of forfeiting the bond or converting collateral, as herein provided, shall have a right to contest such action and appeal therefrom as herein provided.

feited because Morcoal had previously entered into a contract with another coal company, assigning that company its coal and mining rights. Section 18.1 of the Mining Act, 52 P.S. §1396.19 provides:

> Where one operator succeeds another at any uncompleted operation, either by sale, assignment, lease or otherwise, the Secretary may release the first operator from all liability under this act as to that particular operation: Provided, however, That both operators have registered and have otherwise complied with the requirements of this act and the successor operator assumes as part of his obligation under this act all liability for grading, planting and reclamation on the land affected by the former operator.

Both during and after the mining operation, the permit continued in Morcoal's name and Morcoal continued as obligor of the bond. A permitee cannot, by private agreement, delegate duties and obligations imposed by statute. *Middletown Township Municipal Authority v. Department of Environmental Resources*, 7 Pa. Commonwealth Ct. 545, 300 A.2d 515 (1973).

## IV

Morcoal also contends that the EHB should have made inquiry into whether it might employ less stringent means of enforcing compliance than the forfeiture of its bonds by the DER. In *Warren Sand & Gravel v. Department of Environmental Resources*, 20 Pa. Commonwealth Ct. 186, 341 A.2d 556 (1975) we described the EHB's scope of review of a DER action:

> The Board's duty is to determine if DER's action can be sustained or supported by the evidence taken by the Board. If DER acts pur-

suant to a mandatory provision of a statute or regulation, then the only question before the Board is whether to uphold or vacate DER's action. If, however, DER acts with discretionary authority, then the Board, based on the record before it, may substitute its discretion for that of DER.

*Id.* at 203-04, 341 A.2d at 565. *See Rochez Brothers, Inc. v. Department of Environmental Resources,* 18 Pa. Commonwealth Ct. 137, 334 A.2d 790 (1975); *East Pennsboro Township v. Department of Environmental Resources,* 18 Pa. Commonwealth Ct. 58, 334 A.2d 798 (1975). Section 4 of the Mining Act, 52 P.S. §1396.4-(d) requires that a bond be posted before mining at any site, the primary purpose being to assure reclamation of the site. Section 4 of the Mining Act, 52 P.S. §1396.4(h) requires in part that:

If an operator fails or refuses to comply with the requirements of the act in any respect for which liability has been charged on the bond, the Secretary *shall declare* such portion of the bond forfeited. . . [Emphasis added]

The statutory language in 52 P.S. §1396.4(h) is mandatory. This record reveals massive evidence of Morcoal's history of abandoning sites and leaving them unreclaimed. The DER's duty pursuant to 52 P.S. §1396.4(h) was to forfeit the bonds and the EHB properly affirmed the DER's action.

## V

Morcoal contends that the denial of its 1980 license prevented it from reclaiming the sites. Nothing in the Mining Act prohibits reclamation without a license; the act provides only that it shall be "unlawful for any person to proceed to mine coal . . . without first obtaining a license. . . ." Section 3.1(a) of the Mining

Act, 52 P.S. §1396.3a(a). Furthermore, at the EHB hearing a DER witness testified that the DER would have had no objection to Morcoal's carrying out its promise to reclaim with or without licensing.

## VI

Morcoal's contention that there is not substantial record evidence of violation is difficult to comprehend. The record contains unrefuted eyewitness descriptions of violations at the five sites including: 1) water accumulation in pits; 2) inadequate sediment and erosion control; 3) inadequate sediment basins; 4) failure to construct treatment facilities; 5) failure to save topsoil; 6) failure to backfill concurrent with stripping operations; 7) mining off the limits of mine drainage and mining permits; 8) affecting an area within one hundred (100) feet of a road; 9) burying topsoil, which was already scarce; 10) acid bearing material not properly disposed of; 11) silt leaving the mine sites; 12) failure to backfill; and 13) construction of ponds off the permit area. Objection is also made that there was no evidence that Morcoal failed to comply with this court's order of October 10, 1979 that ordered Morcoal to collect and treat acid mine drainage covered under permit number 1189-2, which was assigned by counsel for the DER as a reason for forfeiting the bonds. At the EHB's hearings held in 1980, the EHB on substantial evidence found that conditions of acid drainage still persisted at the Kalp site.

For the above reasons we affirm the order of the EHB.

### ORDER

AND Now, this 4th day of May, 1983 the order of the Environmental Hearing Board in the above-captioned matter is affirmed.