**STATE of Tennessee, Plaintiff-Appellant,**

v.

**GULF AMERICAN FIRE & CASUALTY COMPANY, Defendant-Third Party Plaintiff-Appellee,**

v.

**Carel CATE, d/b/a CCC Coal Company, Third Party Defendant-Appellee.**

Supreme Court of Tennessee, at Nashville.

Nov. 5, 1984.

W.J. Michael Cody, Atty. Gen., Claudius C. Smith, Michael Lee Parsons, Asst. Attys. Gen., Nashville, for plaintiff-appellant.

Barry L. Howard, Gracey, Maddin, Cowan & Bird, Nashville, for defendant-third party plaintiff-appellee.

William A. Reeves, Clinton, for third party defendant-appellee.

OPINION

DROWOTA, Justice.

The State of Tennessee, by and through the Attorney General, brought suit to collect a forfeited Surface Mining Bond, pursuant to the provisions of the Tennessee Surface Mining Law of 1972, T.C.A. § 59–8–211. The State contends and the trial court held that the statute authorizes the forfeiture of the entire amount of the bond. The Third Party Defendant contends and the Court of Appeals held that the State's recovery should not be the full amount of the bond, but should be limited to the amount of money which would actually be required to reclaim a particular tract. We must therefore determine whether under the statute the State's recovery under the bond is limited to the amount of damages suffered and proved by the State or whether the bond is penal in nature and the full amount of the bond must be forfeited.

The following facts are pertinent in resolving this issue. On March 19, 1973, CCC Coal Company filed with the Department of Conservation, Division of Surface Mining, an application to secure a permit to engage in surface mining on a 20 acre site in Cumberland County, Tennessee. On April 3, 1973, as a condition for obtaining the permit, Carel Cate, d/b/a CCC Coal Company, as principal, and Gulf American Fire & Casualty Company, as surety, executed a performance bond pursuant to T.C.A. § 58–1546 (now T.C.A. § 59–8–207). The bond stated that the principal and surety "are held and firmly bound unto the State of Tennessee in the *penal* sum of Twelve Thousand and No/100 Dollars." (emphasis added.) The bond further stated that "if the said Carel Cate, d/b/a CCC Coal Company shall faithfully perform all the requirements of Chapter 547, Tennessee Public Acts of 1972, and all requirements of all rules and regulations lawfully promulgated and adopted by the Commissioner, Department of Conservation, State of Tennessee, then this obligation shall be void; otherwise, it shall remain in full force and effect." CCC Coal Company was issued a permit to engage in surface mining on April 11, 1973.

It was alleged in the complaint and the Chancellor so found that "CCC Coal Company became delinquent in its obligations to reclaim the area mined and covered by the bond." On May 3, 1974, the Company was notified by the Department of Conservation that the permit was revoked and the bond forfeited. On March 28, 1979, the Attorney General's office proceeded to collect the bond from the surety and eventually filed suit in April 1980 against Gulf American Fire & Casualty Company, which sought indemnity against Cate, d/b/a CCC Coal Company, as a third party defendant.

The Chancellor in his final order found "that the bond forfeiture was proper, that the State is entitled to recover the amount of the bond from the Defendant, Gulf American Fire and Casualty Company, and that the Gulf American Fire and Casualty Company is entitled to a judgment over and against the Third Party Defendant." The Chancellor then ordered that the State recover from Gulf American $12,000.00, the full amount of the bond, and that Gulf American recover from Carel Cate, d/b/a CCC Coal Company, the same amount.

The Court of Appeals reversed, holding it was error to authorize the forfeiture of a signed surety bond by forcing the surety to pay the "entire amount of the bond regardless of the extent of violation or damages." The Court concluded that "the State is entitled to recover from the surety an amount equal to the cost (at the time performance was due) of performing all of the reclamation which the principal was obligated to perform and failed to perform, but not more than the face amount of the bond."

T.C.A. § 59–8–211 (previously T.C.A. § 58–1550) provides that in the event of an operator's noncompliance with the statute or regulations the operator's permit may be revoked and "the performance bond shall then be forfeited to the commissioner. When a bond is forfeited pursuant to the provisions of this part, the commissioner shall give notice to the attorney general who shall collect the forfeiture."

The following section, T.C.A. § 59–8–212 provides for a surface mine reclamation fund and states that forfeited bonds shall be placed in this fund. This fund shall be available to the commissioner for expenditure for the reclamation and revegetation of land affected by surface mining operations. The statute further provides that "the proceeds from the forfeiture of any bond shall be used *to the extent required* in completing reclamation and revegetation of the area with respect to which the bond was posted." (emphasis added.)

We have looked to the legislative history of the Act in question in order to resolve the conflict between the Trial Court and the Court of Appeals. During the House debate on the 1972 Act, Mr. McWilliams, the sponsor of an amendment regarding waiver of the bond, referred to the bond as a "penalty exacted by the State" and a "fine." (Record H–040, H.B. 1519, February 23, 1972.)

While it is not expressly stated anywhere in the Act itself or in the debates that the entire amount of the bond is to be forfeited, we believe the legislative intent that it should be is shown by the language of T.C.A. § 59–8–212, cited and emphasized above. That section provides that the proceeds from the forfeiture of a bond "shall be used to the extent required in completing reclamation and revegetation of the area with respect to which the bond was posted." It is clear that the legislature contemplated that some amount would remain after the proceeds of the forfeited bond had been used to reclaim the land for which the bond was posted. This would not be true if the State were to recover only the amount necessary for reclamation or only the amount of damages it had suffered because of noncompliance.

■ The general rule of law applicable here is stated at 12 Am.Jur.2d, *Bonds* § 44, pp. 507, 508 (1964):

> The general rule is that where a bond is given to a public body, as a condition of license or other privilege, or condi-

tioned upon compliance with law, the full penalty of such bond may be recovered as in the nature of liquidated damages for its breach, in the absence of express or implied provisions to the contrary in the statute or ordinance which prescribes the bond, or in the bond itself. Also as a general rule, the penalty in a bond will be treated as liquidated damages upon a breach of the bond, if the damages resulting from breach of the conditions cannot be estimated with certainty.[1]

In *Morcoal Co. v. Commonwealth of Pa.*, 459 A.2d 1303, 1306 (Pa.Cmwlth.1983), a Pennsylvania court found that performance bonds covering surface coal mining sites were penal. The court relied upon the general rule and the fact that damages would be difficult or impossible to ascertain and prove. The court pointed out that excess funds from the forfeiture were to be used in the state's Surface Mining Conservation and Reclamation Fund to reclaim other land and then concluded:

> Neither the bonds nor the Mining Act require proof of actual damages sustained prior to collection on the bonds. The Mining Act clearly allows forfeiture and collection of the bonds for the failure to comply with the requirements of the Mining Act. Although our review of the record reveals that the actual cost of reclamation could be proved, the intent of the Mining Act is, we believe, that the bonds are penal and, therefore, the [Department of Environmental Resources] is not required to prove damages actually sustained in order to collect on the bonds.

459 A.2d at 1306.

*See also American Cas. Co. v. Commonwealth of Pa.*, 65 Pa.Cmwlth. 223, 441 A.2d 1383, 1388–1389 (1982) (holding performance bond under Pennsylvania's Anthracite Strip Mining and Conservation Act to be penal in nature).

Other states have also found under similar legislative schemes that performance

---

1. *Fresh Grown Preserve Corp. v. United States*, 143 F.2d 191 (6th Cir.1944); 11 C.J.S., *Bonds* § 130, p. 510 (1938); *See also Muse v. Swayne*, 70 Tenn. 251, 252 (1879).

bonds executed to insure proper reclamation following surface coal mining operations are penal in nature and that the full penalty of the bond may be recovered.

In *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108, 112 (1968),[2] the West Virginia Supreme Court rejected a coal operator's argument that the recovery on the bond under a mining permit should be only in the amount of damages proved by the State, not the face amount of the bond. The court stated:

> The bond involved in the instant case is penal in nature. It is a bond given to the state as a condition precedent to the acquiring of a surface mining permit. It obligates the principal on the bond to perform its surface mining operation in accordance with the law. If the operator fails to do so, after proper notice, the bond is forfeited.

165 S.E.2d at 112.

The Court then adopted the general rule as stated in American Jurisprudence 2d, *supra*. It also noted:

> There is no contention that there are any contrary provisions in the law which prescribes the bond or in the bond itself. Furthermore, it is quite obvious that it cannot be estimated with any degree of certainty what the cost of reclamation of the twelve acre tract would be.

If this rule concerning the amount of recovery on the subject bond appears harsh, it is so with good cause. For too many years has our state permitted its hills and vales to be ravaged by the steel jaws of the behemoth-like shovel. Strip mining is a legitimate pursuit and thankfully the majority of those engaged therein are law abiding. However, experience has shown that even the legitimate operator becomes lax and frequently fails to fully comply with the law. With the recent enactment of more stringent laws regulating surface mining it is quite apparent that the legislature in-

tended the forfeiture of the face amount of the bond as a penalty for the failure to comply with the law.

165 S.E.2d at 112.

More recently in *Am. Drug. Ins. v. Com. Dept. for Nat. Res.*, 670 S.W.2d 485 (Ky. App.1983) (Discretionary review denied by Kentucky Supreme Court on June 27, 1984), the reclamation bond surety appealed from an order of the Department for Natural Resources and Environmental Protection which revoked the principal's surface mining permit and forfeited the entire reclamation bond. The surety argued that the Department was not entitled to forfeiture of the entire amount of the bond, because "the amount forfeited should bear some 'reasonable relationship and ratio' to the extent and area reclaimed." The trial court and the Court of Appeals held that the Department was entitled to the entire bonded sum. The Court of Appeals based its decision on a prior Kentucky Supreme Court decision, *Louisville and Jefferson County Board of Zoning Adjustment v. Joseph Hofgesang Sand Company, Inc.*, 617 S.W.2d 40 (Ky.1981), in which that Court, relying on the general rule, held:

> [W]here a bond is given to a public body as a condition of a license or as a condition of compliance with the law, upon a breach, the full penalty of such bond may be recovered. . . .

617 S.W.2d at 41.

The surety then argued that the general rule does not apply because of "express or implied provisions to the contrary" in the Kentucky statute. The Court responded that:

> We do not find any such contrary provisions in the statute. In *Hofgesang*, the Supreme Court made it clear that when bonds are given to a public body, like the Department here, and the obligations of the bond are broken, then it is not contemplated that the recovery should be 'for any less sum than that fixed.' *Id.* at

---

**2.** Annot., 86 A.L.R.3d 27, § 16 (1978).

42. The Department and the trial court did not err in forfeiting the total bond. 670 S.W.2d at 488.

■ We find the decisions of the Kentucky, West Virginia, and Pennsylvania courts, which interpret similar statutes, to be very persuasive. As a general rule, in the absence of expressed or implied provisions to the contrary, where a bond is given to a public body as a condition for obtaining a permit and the bond is conditioned on compliance with a specific statute and the rules and regulations promulgated and adopted by the Commissioner of the Department of Conservation, the full penalty of such bond is recoverable in the event of a breach. Here, we have a breach and no expressed or implied provisions to the contrary in the statute or the bond itself.

We agree with the Chancellor's findings that CCC Coal Company did not reclaim the area, that the bond forfeiture was proper, and that the State is entitled to recover the full amount of the bond from the surety and the surety is entitled to a judgment over and against the principal, the Third Party Defendant. We further find that the Act is penal in nature, and thus, the State is not required to prove actual damages in order to recover the full amount of the bond. The judgment of the Court of Appeals is reversed and that of the Chancellor affirmed. The costs of this appeal shall be taxed, as in the trial court, to the Third Party Defendant.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.